UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONIA LESLIE,

       Plaintiff,                Case No. 16-11678

v.

                              Magistrate Judge R. Steven Whalen

CITY OF DETROIT, DETROIT TRANSPORTATION
CORPORATION, MICHAEL ANDERSON,
NICOLE RIDEAUX, *et al*,

       Defendants.
_____/

**OPINION AND ORDER**

On May 11, 2016, Plaintiff Sonia Leslie ("Plaintiff") filed suit in this Court alleging excessive force, false arrest/false imprisonment, violations of her due process rights, conspiracy, malicious prosecution, and municipal/supervisory liability pursuant to 42 U.S.C. § 1983.[1]  She also brought claims under state law of malicious prosecution, assault and battery, false arrest/false imprisonment by Defendants before and during her arrest at the Rosa Parks Transit Center ("Transit Center") in the City of Detroit.  Before the Court is

---

[1] Prior to the filing of the present motion, Plaintiff agreed to dismiss the state law claims of malicious prosecution, assault and battery, and false arrest/imprisonment. *Docket #20-2,* Pg ID 152.  Later, Plaintiff agreed to dismiss the federal claim of false arrest/imprisonment, conspiracy claims, and all of the municipal claims. *Docket #22.*

Defendants Detroit Transportation Corporation ("DTC"), Michael Anderson ("Anderson"), and Nicole Rideaux's ("Rideaux's") August 9, 2017 Motion for Partial Summary Judgment [Docket #20]. The Court finds as follows:

1. The motion as to the claims of excessive force as to Defendant Rideaux (Count I) are dismissed WITH PREJUDICE

2. Federal claims of false arrest/false imprisonment (Count II) are dismissed WITH PREJUDICE.

3. Fourth Amendment due process claims against Defendants Rideaux and Anderson (Count III) are dismissed WITH PREJUDICE.

4. Federal claims of conspiracy (Count IV) are dismissed WITH PREJUDICE.

5. Malicious Prosecution claims brought under federal law against Defendants Rideaux and Anderson (Count V) are dismissed WITH PREJUDICE.

6. State claims of Malicious Prosecution (Count VI) are dismissed WITH PREJUDICE.

7. State claims of Assault and Battery (Count VII) are dismissed WITH PREJUDICE.

8. State claims of false arrest/false imprisonment (Count VIII) are dismissed WITH PREJUDICE.

9. Federal claims against Defendant City of Detroit and Defendant DTC (Count IX) are dismissed WITH PREJUDICE.

## I. FACTUAL BACKGROUND

This case pertains to Plaintiff's January 22, 2014 arrest by Detroit Transit Police Officers Anderson and Rideaux. Plaintiff makes the following allegations: While waiting for a bus at the Transit Center, Plaintiff asked a DTC desk agent what time her bus would be

arriving. *Amended Complaint,* ¶¶ 12-13. In response, she was directed to check the "wall schedule" for the arrival time. *Id.* at ¶ 13. After determining that the wall schedule was not updated, Plaintiff again approached the desk agent for information. *Id.* ¶¶ 13-14. In response, the desk agent ridiculed her but offered no assistance. *Id.* Plaintiff walked away from the agent but informed the desk agent that she "should offer better customer service." *Id.* In response, the agent "rudely yelled" at Plaintiff. *Id.* Plaintiff then left the building to determine if her bus had arrived. *Id.* However, due to the cold weather, Plaintiff went back into the bus station and sat down to wait for the next bus, at which time she noticed that the desk agent was speaking to defendant officers Anderson and Rideaux. *Id.* at ¶ 15. Plaintiff, lawfully seated in the waiting area, was then approached by the defendant officers who asked her why she was at the Transit Center. *Id. at* ¶ 16. In response, Plaintiff informed them that she was waiting for a bus to take her to an appointment. *Id.* The officers then told Plaintiff that it was "impermissible to harass" a Transit Center employee. *Id.* at ¶ 17. Plaintiff responded that she had merely inquired about the bus schedule and that the desk agent was very rude. *Id.* The officers then directed her to wait for her bus outside of the terminal. *Id.* at ¶ 18. In response, Plaintiff stated that "no reason" existed for her to be forced to wait outside in the cold when it was the desk agent and not she who had been disturbing the peace. *Id.* Defendant Rideaux then grabbed Plaintiff by the arm and pulled her from a seated to standing position. *Id.* at ¶ 19. Plaintiff told Rideaux that all she wanted to do was wait for the bus and that Rideaux was hurting her. *Id.* While Plaintiff was talking to Rideaux,

Defendant Anderson came up from behind Plaintiff and forcefully pushed Plaintiff to the ground face first. *Id.* at ¶ 21. As a result of Anderson's assault, Plaintiff's face struck the cement floor, resulting in a facial laceration requiring medical attention. *Id.* at ¶ 22. Plaintiff's glasses were also broken as a result of the assault. *Id.* Both defendant officers pulled Plaintiff's hands behind her, handcuffed her, and pulled her into an upright position by pulling on her handcuffed arms. *Id.* at ¶ 24. Plaintiff alleges that at all times, she was fully compliant with the officers' instructions and did not resist officers. *Id.* at ¶¶ 25-26.

Plaintiff also alleges that to "cover up their wrong doing," defendant officers caused Plaintiff "to be falsely charged and prosecuted for the crime of assault and battery." *Id.* at ¶ 31. As a result of defendant officers' excessive force, she received a diagnosis of head trauma and received nine stitches to close the forehead wound. *Id.* at ¶ 35. She continues to suffer severe physical pain and mental distress as a result of the physical trauma and "the false proceedings" resulting from defendant officers' actions. *Id.* at ¶ 33. She alleges that the defendant officers "created false and misleading police reports and gave false accounts to the prosecuting attorney regarding the circumstances surrounding her arrest and injuries. *Id.* at ¶ 36. On February 18, 2016, a State district court judge dismissed all of the criminal charges against Plaintiff. *Id.* at ¶ 38.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing

"evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

Aside from Plaintiff's voluntary dismissal of a number of the claims, Defendants argue for the dismissal of the following claims: Excessive force (Count I) (brought against Defendant Rideaux only); due process violations (Count III); and malicious prosecution (federal)(Count V).

Defendants' account of the events differs from Plaintiff's account. They state that at the time of the events in question, they were informed by a DTC manager that "an unknown female, later determined to be Plaintiff," had been threatening to "kick" the desk agent's "fucking ass if she came from behind the [service] window." *Defendants' Brief* at 1, *Docket #20-2,* Pg ID 149. The desk agent then confirmed to Defendants that Plaintiff had threatened her and identified Plaintiff as an individual then seated in the waiting area. *Id.* Defendants state that as they approached Plaintiff, she became "verbally hostile," telling them to "get out of [her] fucking face." *Id.* Defendant Rideaux asked Plaintiff to stop yelling profanities because woman and children were within earshot. *Id.* Defendant Rideaux informed Plaintiff that she could be arrested and ticketed for disorderly conduct and with interfering with a city employee in the performance of her duties. *Id.* at 1-2. After Plaintiff continued to swear at the defendant officers, Defendant Rideaux told Plaintiff to wait outside, to which Plaintiff

responded "I'm not going no fucking where." *Id.* at 2. At that point, approximately eight minutes after the communication began, Defendant Rideaux grasped Plaintiff's left upper arm to guide her to her feet and escort her outside. *Id.* at 2-3 Plaintiff then stood up, and after approximately two more minutes of conversation in a standing position, attempted to punch Defendant Rideaux. *Id.* Defendant Anderson then intervened to pull Defendant Rideaux out of harm's way. *Id.* at 2. Due to "the momentum of the failed punch" Plaintiff became unsteady at which point Defendant Anderson initiated "a strong-arm take down" to restrain Plaintiff "before the situation escalated any further." *Id.*

Defendants state that they are "uncertain as to how specifically Plaintiff was injured" but noticed a "small cut near her left eyebrow" after she was placed in cuffs. *Id.* Plaintiff was transported to the hospital for medical treatment and then to the Detroit Detention Center for processing. *Id.* at 2-3. She was charged with felonious assault of a police officer. *Id.* at 3. However, the charges were dropped because Defendants "were not notified of the preliminary examination and failed to appear." *Id.*

### A. Excessive Force (Count I)

Defendants argue that the claim of excessive force against Defendant Rideaux is subject to dismissal because her actions do not rise to the level of a constitutional violation.[2] *Plaintiff's Brief* at 6-9. They argue alternatively that even assuming that Defendant Rideaux

---

[2]The present motion does not seek or include argument for the dismissal of the excessive force claims against Defendant Anderson. That claim therefore remains.

applied excessive force, her actions were not objectively unreasonable and thus, she is entitled to qualified immunity. *Id.*

A claim of excessive force brought by a free individual, such as the Plaintiff was at the time of her arrest, is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness. *Graham v. Connor, supra*. That standard is objective, and is applied without reference to the officer's subjective motivations. *Id*. In *Gaddis v. Redford Township*, 364 F.3d 763,772 (6th Cir. 2004), the Court set forth the following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S. at 396. The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that "police

officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham* at 397. Indeed, there are circumstances where an officer may reasonably use even deadly force. *See Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The question is whether the officers used reasonable force under the circumstances as perceived by them, filtering out the distorting effects of hindsight, and with due deference to their on-the-scene professional judgment.

Claims of excessive force against Defendant Rideaux are subject to dismissal. Plaintiff admitted that Defendant Rideaux repeatedly directed her to leave the terminal over the course of an eight-minute conversation before Defendant Rideaux pulled her to her feet by grabbing her upper arm. *Deposition of Sonia Leslie, Defendants' Exhibit H* at 36. Plaintiff testified that although Defendant Rideaux gripped her arm in a way that was "pinching" her, Defendant Rideaux released her grip after Plaintiff had risen to a standing position. *Id.* at 39. Plaintiff testified that Defendant Rideaux did not touch her thereafter. *Id.* at 42. She testified that approximately two minutes after being forced to her feet, Defendant Anderson "slammed" her to the ground in "a split second." *Id.* at 47. She states that after she was slammed to the ground and handcuffed, she was pulled to her feet by her arms by either one or both defendants. *Id.* at 53.

Taken in the light most favorable to Plaintiff, Defendant Rideaux's "pinching" of Plaintiff's arm to raise her to a standing position (following Plaintiff's repeated refusal to

leave the building) does not constitute excessive force. "A plaintiff's resistance to an officer's commands is relevant even if the officers were not attempting to arrest him." *Kelly v. Sines*, 647 Fed.Appx. 572, 575 (6th Cir. May 6, 2016). Likewise, Plaintiff's speculation that Defendant Rideaux deliberately distracted Plaintiff with conversation so that Defendant Anderson could tackle her from behind does not state a plausible claim of excessive force. Even assuming that Defendant Rideaux knew that Defendant Anderson intended to subdue Plaintiff, there is no evidence that she believed that Defendant Anderson would use excessive force resulting in injuries to Plaintiff.

While it is unclear whether Defendant Rideaux assisted Defendant Anderson in handcuffing Plaintiff, the handcuffing, by itself, does not state a claim of excessive force. *See Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002)(handcuffing the plaintiff subject to an arrest not unreasonable where plaintiff had already disobeyed a direct order). Likewise, while Plaintiff alleges that she complained of pain as Defendants pulled her from the from the ground after being handcuffed, she has provided no evidence to show that Defendants deliberately pulled her to her feet in a manner designed to elicit pain.

The Court has also considered Plaintiff's allegation that Defendant Rideaux committed a constitutional tort by failing to intervene in Defendant Anderson's alleged use of excessive force. At the scene of an arrest, "a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the

opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). However, Plaintiff testified that Defendant Anderson "slammed" her to the ground in "a split second." *Id.* at 47. By Plaintiff's own account, Defendant Anderson's unexpected and rapid use of force would have deprived Defendant Rideaux of either the opportunity or means to intervene. As such, claims of excessive force against Defendant Rideaux will be dismissed.

Because Plaintiff cannot show a constitutional violation by Defendant Rideaux, the claims are also barred by qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County, Tenn.,* 534 F.3d 531, 538 (6th Cir. 2008)(*citing Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In determining whether claims are barred by qualified immunity, the courts consider (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *See also Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 812, 172 L.Ed.2d 565 (2009). In the absence of a constitutional violation, the court need not determine whether Defendant Rideaux actions were reasonable or whether the right in question was "clearly established." *Dunigan v.*

*Noble,* 390 F.3d 486, 495 (6th Cir.2004).

### B. Due Process Violations (Count III) and Malicious Prosecution (Count V)

Defendants also argue that Plaintiff's "due process" claim that Defendants withheld exculpatory evidence is without merit. *Defendants' Brief* at 12-13. They contend that Plaintiff has not provided a factual basis for the claim that they withheld exculpatory evidence, noting further that the claims against Plaintiff were dismissed at a preliminary hearing after Defendants failed to show up. *Id.*

Plaintiff's "due process" claim of improprieties by Defendants in creating a police report are analyzed under the Fourth Amendment. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver,* 510 U.S. 266, 273,114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994)(*citing Graham v. Connor, supra,* 490 U.S. at 395, 109 S.Ct. at 1871); *See also Gregory v. City of Louisville*, 444 F.3d 725, 748–49 (6th Cir. 2006)(same).

Plaintiff brings claims that Defendants failed to procure Transit Center video evidence exculpating her pursuant to *Brady v. Maryland,* 373 U.S. 8383 S.Ct. 119410 L.Ed.2d 215 (1963). "A successful *Brady* claim requires a three-part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice." *Bell v.*

*Bell*, 512 F.3d 223, 231 (6th Cir. 2008). The Court declines to consider whether defendant officers withheld evidence or the evidence was favorable. Even assuming that Plaintiff can meet the first two prongs of a *Brady* claim; the video would have provided favorable evidence and Defendants suppressed the evidence, her claim stumbles on the final prong. "To satisfy the prejudice requirement" for a *Brady* claim, the plaintiff "must show there is a reasonable probability that the outcome of the trial would have been different had the materials been timely disclosed to the defense." *Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir. 2011). Here, claims against Plaintiff were dismissed without prejudice after Defendants failed to show up for the preliminary hearing. There was no trial, much less a verdict necessary to show a *Brady* violation.

For contrasting reasons, Plaintiff's other Fourth Amendment claim is also subject to dismissal. The elements of malicious prosecution under the Fourth Amendment are as follows: (1) The defendant "ma[d]e, influence[d], or participate[d] in the decision to" initiate criminal prosecution against the plaintiff; (2) There was no probable cause; (3) Plaintiff suffered a "'deprivation of liberty'" as a consequence of the prosecution; and (4) The criminal prosecution was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir.2010)(*citing Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)).

At a minimum, a question of fact remains as to prongs one, two, and three. Defendants acknowledge that they created police reports alleging an assault by Plaintiff. "Under the first prong, a defendant need not have actually made the decision to prosecute to

be held liable for malicious prosecution." Rather, law enforcement officers may be held liable for malicious prosecution if they influence or play a role in the criminal process." *Steiger v. Hahn*, 2016 WL 5661563, at *8 (E.D.Mich. September 30, 2016)(*citing Sykes* at 311-15). As to the second prong, Plaintiff denies that she assaulted either Defendant. Defendants have not presented any evidence aside from their own testimony to support the allegations of assault. Defendants' claim that probable cause existed for charging Plaintiff with assault, at a minimum, would be defeated by a showing that the report contained "deliberate material misrepresentations . . ." *Sykes* at 308. Under the third prong, Plaintiff's arrest and detention, while not prolonged, constitutes a deprivation of liberty.

However, the dismissal of the claims against her without prejudice does not constitute a "favorable resolution" for purposes of a malicious prosecution claim. Barring either a judgment with prejudice in Plaintiff's favor or a voluntary dismissal by prosecutors, the claims against Plaintiff have not been "invalidated" for purposes of the malicious prosecution claim. *See Heck v. Humphrey*, 512 U.S. 477, 487 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994); *Craft v. Billingslea,* 2017 WL 6039559, at *5 (E.D.Mich. December 6, 2017)(Drain, J.)("Court has not identified one" Sixth Circuit case establishing that "a dismissal without prejudice constitutes a favorable termination" for purposes of a malicious prosecution claim). "'[P]roceedings are terminated in favor of the accused only when their final disposition is such as to indicate the accused is not guilty.'" *Id.* (*citing Thornton v. City of Columbus*, 171 F.Supp.3d 702, 710 (S.D.Ohio 2016))(internal citations omitted). Because Plaintiff cannot

meet all of the elements of a malicious prosecution claim, the Court need not consider whether Defendants are entitled to qualified immunity. Accordingly, the claims of malicious prosecution against Defendants Rideaux and Anderson will be dismissed without prejudice.

## IV. CONCLUSION

For all the above reasons, Defendants' Motion for Dismissal [Docket #20] is GRANTED in part and DENIED in part as follows:

 1. The motion as to the claims of excessive force as to Defendant Rideaux (Count I) are dismissed WITH PREJUDICE

2. Federal claims of false arrest/false imprisonment (Count II) are dismissed WITH PREJUDICE.

3. Fourth Amendment due process claims against Defendants Rideaux and Anderson (Count III) are dismissed WITH PREJUDICE.

4. Federal claims of conspiracy (Count IV) are dismissed WITH PREJUDICE.

5. Malicious Prosecution claims brought under federal law against Defendants Rideaux and Anderson (Count V) are dismissed WITHOUT PREJUDICE.

6. State claims of Malicious Prosecution (Count VI) are dismissed WITH PREJUDICE.

7. State claims of Assault and Battery (Count VII) are dismissed WITH PREJUDICE.

8. State claims of false arrest/false imprisonment (Count VIII) are dismissed WITH PREJUDICE.

9. Federal claims against Defendant City of Detroit and Defendant DTC (Count IX) are dismissed WITH PREJUDICE.

The sole remaining claim is the excessive force claim against Defendant Anderson.

IT IS SO ORDERED

                                          s/ R. Steven Whalen
                                          R. STEVEN WHALEN
                                          UNITED STATES MAGISTRATE JUDGE

Dated: March 26, 2018

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 26, 2018, electronically and/or by U.S. mail.

                                          s/Carolyn M. Ciesla
                                          Case Manager to the
                                          Honorable R. Steven Whalen